No. 86-421

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

JACK JASON COX,

        Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Christopher Daly, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
John Paulson, Asst. Atty. General, Helena
Robert L. Deschamps, III, County Attorney, Missoula,
Montana

Submitted on Briefs: Jan. 15, 1987

Decided: March 12, 1987

MAR 12 1987

Filed:

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant appeals the April 11, 1986, judgment of the Fourth Judicial District Court finding defendant guilty of aggravated burglary. We affirm.

At approximately 2:00 a.m. on November 17, 1985, Skip Caluori noticed a station wagon drive by his home and pull into a grassy driveway beside his neighbor's woodpile. Caluori was suspicious as he had seen a similar car earlier in the evening drive by his house slowly. Caluori and his neighbor, Gene Nulliner, live on Cross Street in Piltzville, Montana. Cross Street receives very little traffic.

After seeing two men emerge from the station wagon, Caluori phoned Nulliner and told him he thought two prowlers were by his woodpile. Nulliner turned on his outside lights and he and Caluori approached the station wagon. Caluori's sister phoned the sheriff's department concerning the suspected prowlers.

Defendant and another man were crouching behind the station wagon, apparently trying to hide. Nulliner told the men to move away from the car and asked what they were doing. Defendant stated they were fixing a flat tire. Caluori and Nulliner saw no evidence of a flat tire and asked the men to step onto the lighted driveway. At that point, Caluori and Nulliner saw numerous tools and equipment lying on the ground next to the station wagon. Defendant made an offer to trade a gun in exchange for their release.

As they stood in the driveway waiting for the sheriff, Nulliner noticed defendant inching his hand toward the inside of his coat. Nulliner grabbed defendant's arm and reached inside his coat and extracted a handgun. The gun was a

loaded .38 semi-automatic revolver. Law enforcement officers arrived shortly thereafter.

Nulliner observed the name of his neighbor, Gene Sperry, on a power generator lying near the car so he went across the street and returned with Sperry. Sperry has a large garage where he maintains a shop to conduct his business as a pump repairman. Sperry identified the equipment next to the station wagon as his, including a tool chest in the back of the station wagon. Caluori and Sperry both noticed a well beaten path between Sperry's garage and the station wagon. There was frost on the ground and the tracks were easily seen. Sperry stated his equipment was in the shop when he closed up at 10 p.m. but that he had not locked the door.

The stolen property included an air compressor, electric welder, hand truck, power plant, two toolboxes, a trailer house wheel and tire, a boat trailer wheel, and several other tires. The equipment was valued at $7000. Defendant was discovered to be the owner of the station wagon.

Defendant was charged with aggravated burglary and the case was consolidated with several other theft charges pending against defendant. Defendant plead guilty on all counts except the aggravated burglary count. A bench trial was conducted on April 1, 1986, as to the aggravated burglary charge. Defendant was found guilty of aggravated burglary and sentenced to 30 years in the Montana State Prison with 20 years suspended, in addition to his sentences on the other counts. Defendant appeals and raises the following issue:

1) Whether the evidence is sufficient to support defendant's conviction for the offense of aggravated burglary?

Aggravated burglary is defined in § 45-6-204(2), MCA:

(2) A person commits the offense of aggravated burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit a felony therein and:

(a) in effecting entry or in the course of committing the offense or in immediate flight thereafter, he or another participant in the offense is armed with explosives or a weapon; or

(b) in effecting entry or in the course of committing the offense or in immediate flight thereafter, he purposely, knowingly, or negligently inflicts or attempts to inflict bodily injury upon anyone.

Defendant admits direct evidence was introduced proving the garage is an occupied structure and that he was carrying a weapon. However, defendant contends there is no direct evidence that he knowingly entered the garage and remained unlawfully with the intent to commit a felony therein. Defendant further contends the circumstantial evidence is insufficient to prove he was ever in the garage. Finally, defendant argues there was inadequate time to transport all the equipment from the garage to his car in the five minutes from the time Caluori first saw the car park in the driveway.

Our duty is to review the record in a light most favorable to the State and determine whether there is substantial evidence supporting the conviction. State v. Wilson (Mont. 1981), 631 P.2d 1273, 38 St.Rep. 1040. We find substantial credible evidence in the record to prove defendant committed aggravated burglary.

Circumstantial evidence may be used to prove that defendant entered the garage and committed a felony while unlawfully within the structure. In State v. Kinghorn (1939), 109 Mont. 22, 93 P.2d 964, we held that possession of stolen property, accompanied by other incriminating circumstances, and false or unreasonable explanation by the suspect is sufficient to sustain a conviction of burglary.

4

In this instance, defendant was in possession of stolen property. The equipment was lying next to his station wagon in a deserted area at 2 a.m. A toolbox from the garage was in the back of defendant's station wagon. When questioned by Nulliner, defendant replied that the equipment was his and that he worked in a body shop. Defendant's answer was clearly false.

There were other incriminating circumstances surrounding defendant's possession of the stolen property. The stolen items had been removed between 10 p.m. and 2 a.m. and the frost on the ground revealed a well-beaten path from the garage to defendant's vehicle. After Caluori and Nulliner appeared on the scene, defendant first lied that he was fixing a tire and then attempted to reach for a gun. Defendant also offered to trade the gun for his release.

The State was not required to show that defendant and his accomplice were capable of removing all the stolen items in a span of five minutes. Even if defendant did prove it was impossible to move the items in five minutes which he did not, a plausible explanation is that they moved the stolen goods prior to driving the car to the location.

It is a rare case where "intent" is proven by direct evidence. The existence of intent is a question for the jury. State v. Jackson (1979), 180 Mont. 195, 589 P.2d 1009. In this case, there is substantial evidence from which to infer defendant's intent to commit aggravated burglary. The District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_John Conway Harrison._

_John G. Sheehy_

_L. C. Gulbrandson._

_William E. Hunt_

Justices

6