No. 89-406

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

RAYMOND ERNEST FLOYD, JR.,

      Defendant and Appellant,

APPEAL FROM:   District Court of the Sixth Judicial District,
                In and for the County of Park,
                The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Dan Yardley, Esq., Yardley & Yardley, Livingston,
          Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
          James Yellowtail, Asst. Attorney General, Helena
          William Nels Swandal, Park County Attorney,
          Livingston, Montana; Jon M. Hess, Deputy County
          Attorney, Livingston, Montana

Submitted on Briefs:  February 15, 1990

Decided:  April 9, 1990

Filed:

_____
             Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Raymond Floyd appeals the judgment of a Park County jury finding him guilty of two counts of burglary. We affirm the District Court's judgment.

Defendant presents two issues:

1. Did the District Court err in denying defendant's motion to dismiss Count I at the conclusion of the State's case-in-chief?

2. Did the District Court err in not giving defendant's proposed instruction 9B regarding possession of the stolen property?

By information defendant was charged in separate counts under § 45-6-204, MCA, with burglarizing two homes in Livingston, Montana. Count I arises from a break-in on July 16 or 17, 1988 at an apartment located on North 7th Street, and Count II stems from the break-in at a residence on South C Street sometime between July 11 and July 13, 1988.

A brief summary of the facts surrounding Count I follows:

When Gerald and Pearl Stratton and family, along with their houseguest Robert Armijo, returned from a visit to Yellowstone National Park, they discovered their apartment had been broken into sometime during their absence. The Strattons had been gone from their home between 10 a.m. on July 16, and 8 p.m. on July 17, 1988. Mrs. Stratton reported the burglary to the Livingston Police on July 18, 1988. Items taken during the burglary included a wristwatch, pocket change, clothing, a pair of diamond earrings and

2

a 14-karat gold necklace. The necklace belonged to Mr. Armijo. Access to the Stratton home had been gained through a window.

Defendant gave a gold necklace to Anita Christensen early in the morning of July 17. Ms. Christensen testified at trial that she had met defendant about 10 p.m. on July 16 and they spent the evening with a group of people in various Livingston bars. At closing time the group, which included defendant's sister Margaret Moore, went to Ms. Moore's residence for a party. Ms. Moore resided in an apartment above the Strattons'.

Ms. Christensen left the party at the Moore home around 3 a.m. Shortly thereafter defendant visited Ms. Christensen at her home, but left when Ms. Christensen requested he do so. Defendant returned to Ms. Christensen's home at approximately 4 a.m. and gave her a gold necklace in a gray earring box.

Because she suspected the necklace may have been stolen, Ms. Christensen turned in the necklace to a dispatcher for the Livingston Police Department on July 18. The investigation that followed revealed the necklace was the one belonging to Mr. Armijo stolen from the Stratton home.

At trial Ms. Christensen testified that defendant had spoken of buying a car and a gold ring for her. Ms. Christensen stated she believed the defendant was trying to get intimate with her.

On July 19, the day after the Stratton burglary was reported and Ms. Christensen turned in the gold necklace, defendant voluntarily gave a statement. Defendant indicated that he had purchased the stolen necklace from Roger Phillips while leaving his

sister's residence on the night of the party. Mr. Phillips denied selling any necklace to the defendant.

The police conducted a search of the defendant's residence in connection with Count I on July 19. None of the other items taken in the Stratton burglary were found in the search. The officers searching defendant's residence did, however, notice unusually large quantities of food. Livingston police had received a report a few days earlier of a break-in where large amounts of food had been taken from another Livingston residence.

The circumstances of Count I intersect with circumstances of Count II which are as follows:

John H. (Harve) Counts, Sr. resides at 221 South C Street in Livingston. While Mr. Counts was in Billings receiving medical treatment from July 11 to July 13, 1988, his house was burglarized. Upon returning, Mr. Counts immediately reported the break-in. Access had been gained by prying the back door open and many food items had been taken.

Livingston police conducted a second search of defendant's residence in connection with Count II on July 26. The police seized several items which Mr. Counts identified at trial as having been stolen from his home. Mr. Counts also testified that he has known defendant for several years and defendant was familiar with the Counts residence.

A trial was held February 27 through March 1, 1989 in Park County. Following the State's presentation of its case-in-chief, the defense moved for a directed verdict on Count I, the Stratton

4

burglary.  The motion was denied.

Issue I: Defendant's Motion to Dismiss

At the conclusion of the State's case-in-chief defense counsel presented a motion to dismiss Count I and enter a directed verdict of acquittal on the basis there was insufficient proof to go to the jury.  Defendant argued that the State merely proved that defendant had possession of the necklace and evidence of possession of stolen property alone is insufficient to sustain a burglary conviction.

Whether a motion for directed verdict is granted lies within the discretion of the trial judge, as provided in § 46-16-403, MCA, which reads in part:

> When, at the close of the state's evidence  . . . the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant . . . (Emphasis added.)

That the decision whether to dismiss a charge or direct a verdict of acquittal lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion is well-established in Montana case law.  See, State v. Graves (Mont. 1990), ___ P.2d ___, ___, 47 St.Rep. 483, 485; State v. Goltz (1982), 197 Mont. 361, 372, 642 P.2d 1079, 1085; State v. Just (1979), 184 Mont. 262, 277, 602 P.2d 957, 965.  Furthermore, only if there is no evidence to support a guilty verdict may a verdict of acquittal be directed.  Graves at ___, 47 St.Rep. at 485.

The District Court judge, in his sound discretion denied

5

defendant's motion, stating that there was other corroborating evidence, beyond defendant's mere possession of the necklace, sufficient to submit the case to the jury. We agree with the District Court's assessment and will not disturb its decision on appeal.

The State's burden of proof with regard to the charge of burglary alleged in Count I was to show that the Stratton residence had been unlawfully entered for the purpose of committing an offense therein and that defendant was responsible therefor. Section 45-6-204(1), MCA. The record clearly shows that, in its case-in-chief, the State presented direct evidence sufficient to meet its burden.

The State presented testimony of witnesses Gerald Stratton and Robert Armijo indicating the Stratton residence had been broken into during the weekend of July 16-17, 1988, and that several items, including a gold necklace, had been taken in the burglary. Police Officer Keyes testified entry had been gained through a window. Officer Keyes also indicated that investigation revealed defendant was a frequent visitor to his sister's apartment upstairs from the Strattons'. Anita Christensen's testimony linked defendant to the Stratton burglary, establishing that defendant had been in the building which housed the Stratton apartment around 2 a.m. on July 17, 1988 and that defendant had given her the gold necklace in a gray earring box at about 4 a.m. the same day. Suspecting the necklace was stolen Ms. Christensen turned the necklace over to the police. Mr. Armijo identified the necklace

at trial as having been stolen from his suitcase at the Stratton home.

The above-listed evidence corroborates the fact that defendant was in possession of the gold necklace. While mere possession of stolen property is insufficient to support a conviction of burglary, it is a strong circumstantial indication of guilt which may be considered by the jury. State v. Kramp (1982), 200 Mont. 383, 396, 651 P.2d 614, 621 and State v. Deeds (1952), 126 Mont. 38, 40, 243 P.2d 314, 315.

Defendant's possession of the necklace, taken with the other incriminating circumstances presented by the State, will sustain the burglary conviction.

> [P]ossession of stolen property, accompanied by other incriminating circumstances, and false or unreasonable explanation by the suspect is sufficient to sustain a conviction of burglary.

State v. Cox (1987), 226 Mont. 111, 114, 733 P.2d 1307, 1309.

The State, through Officer Lynn Gillett, offered evidence that refuted defendant's explanation of his possession of the necklace. The defendant stated that he bought the necklace from a man named Roger Phillips on July 17, while leaving the party at his sister's apartment. Officer Gillett testified that Mr. Phillips denied selling the necklace to defendant. The jury was presented with conflicting stories of how defendant came to possess the necklace and obviously chose to adopt the State's position on the matter. The State did establish that defendant was in exclusive possession of the necklace. The possession was accompanied by incriminating

7

circumstances and defendant's fabricated explanation. On appeal, this Court presumes the correctness of the District Court's judgment and it is the appellant's burden to overcome such presumption. State v. District Court of Eighth Jud. Dist. (1978), 176 Mont. 257, 264, 577 P.2d 849, 853. We find that the defendant did not overcome the presumption and hold the lower court properly denied the defendant's motion for a directed verdict.

## Issue II: Jury Instruction 9B

Defendant argues that the trial court's failure to give his proposed instruction 9B was error. Proposed instruction 9B is taken verbatim from an instruction previously approved by this Court, where we stated:

> We would support on retrial, the following instruction on the point:
>
> "Unauthorized control or possession of property belonging to another is ordinarily a circumstance from which the jury may draw an inference and find, in the light of all the evidence in the case, that the person in possession committed the theft of the property.
>
> "You are permitted but not required to infer from the defendant's possession of the property of another that the defendant is guilty of theft only if in your judgment such an inference is warranted by the evidence as a whole. It is your exclusive province to determine whether the facts and circumstances shown by the evidence warrant the inference to be drawn by you.
>
> "The possession of the property by the defendant does not shift the burden of proof which is always on the State to prove beyond a reasonable doubt every essential element of

8

the offense with which defendant is charged.

> "The defendant's possession of property belonging to another may be satisfactorily explained in the evidence independently of any testimony of the defendant personally. If defendant does take the witness stand to explain his possession of the property, the weight to be attached to his explanation is exclusively for you to determine. Even if defendant's possession of the property is unexplained, you cannot find him guilty, if after consideration of all the evidence in the case, you have a reasonable doubt as to his guilt.

> "If under the evidence, defendant's possession of the property of another is consistent with his innocence, then the jury should acquit the defendant unless he has been proven guilty beyond a reasonable doubt by other evidence in the case."

State v. Kramp (1982), 200 Mont. 383, 396-97, 651 P.2d 614, 621-22. The District Court refused the instruction as not timely because it was not submitted the requisite five days before trial. Additionally, the District Court judge termed the instruction "verbose and confusing." Moreover, the instructions approved by the trial court incorporate all of the essential provisions of the refused instruction 9B.

Montana case law holds that where a proposed instruction was adequately covered by a given instruction, it is not error for the trial court to refuse the proposed instruction.

> It is not error for a trial court to refuse to give a requested instruction if other instructions given adequately cover the rejected instruction's legal theory. State v. Lagge (1964), 143 Mont. 289, 295, 388 P.2d 792, 795. Nor must a trial court give repetitious instructions or instruct "on every nuance" of a defense theory. State v. Graves (Mont. 1981), 633 P.2d 203, 210, 38 St.Rep. 9, 16.

9

State v. Bingham (1987), 229 Mont. 101, 111, 745 P.2d 342, 348.

In the case at bar the District Court adequately covered the proposed instruction 9B principles in the instructions given. No prejudice to the defendant resulted from the District Court's refusal of proposed instruction 9B. We therefore affirm the District Court.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

10